UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 JAN -9 PM 3: 24
N.D. OF ALABAMA

ENTERED
JAN 0 9 2002

| | |
|---|---|
| WILLIAM RANDALL BRAINARD, ) | |
| Plaintiff, ) | |
| vs. ) | Civil Action No. CV-01-2896-NE |
| HARDIN'S BAKERY, L.L.C., ) TOMMY WESTER, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This action is before the court on two motions: plaintiff's motion to remand; and defendant's motion to dismiss.

Plaintiff, William Brainard, filed this action in the Circuit Court for Morgan County, Alabama. He alleges that defendants, Hardin's Bakery, L.L.C., and Tommy Wester: fraudulently represented that he was covered under a long term care insurance policy; committed conversion by deducting monthly insurance premiums from his paycheck, but failing to actually tender the premium payments to the appropriate insurance agency; and, breached contractual obligations by failing to remit plaintiff's premium payments to the appropriate insurance agency. (Complaint at 8-9.) Plaintiff claims both compensatory and punitive damages. (Complaint at 8-9.) The defendants removed the action to federal court alleging that plaintiff seeks to recover long term disability benefits under a long term disability benefits plan which is part of an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") and, therefore, that plaintiff's claim is completely preempted under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

## I. SUMMARY OF FACTS

In January 2000, plaintiff spoke with a representative of Hardin's Bakery regarding employment opportunities. (Plaintiff's Brief in Support at 3.) Plaintiff disclosed on his employment application that he previously had suffered a heart attack, and, had undergone open heart surgery. (*Id.* at 3.) Hardin's Bakery assured plaintiff that, provided he passed the company's physical examination, his heart attack and open heart surgery would not prevent plaintiff from obtaining employment with the defendant. (*Id.* at 3.)

At first, plaintiff worked as an independent bread distributor for Hardin's Bakery. (*Id.* at 3.) In June 2000, an operations manager position became available. (*Id.* at 4.) Plaintiff submitted to the company's physical examination, passed, and began work. (*Id.* at 4.) While plaintiff worked as an independent contractor, he had exercised an option to acquire long term disability insurance coverage through the company's long term disability insurance plan. (*Id.* at 4.) Once hired as operations manager, plaintiff was eligible for long term disability insurance benefits and other benefits after a ninety day waiting period. (*Id.* at 4.) During the first week of October 2000, Hardin's Bakery began deducting long term disability benefits insurance premiums from plaintiff's pay check. Tommy Wester, director of human resources for Hardin's Bakery, informed plaintiff that he was insured for long term disability. (*Id.* at 4-5.)

On January 26, 2001, while on duty, plaintiff fainted. (*Id.* at 5.) He was examined at the University of Alabama at Birmingham School of Medicine, and diagnosed as suffering from ischemic heart disease, hypertension, and hyperlipidemia. (*Id.* at 5.) Plaintiff also suffers from a rapid heart rhythm. (*Id.* at 5.) Plaintiff was treated with an implantable defibillator and placed on light duty restrictions. (*Id.* at 5-6.) Plaintiff subsequently requested that he be allowed to return to

2

work; however, Hardin's Bakery refused, saying that he could not return to work until his physician removed the light duty restrictions placed on his physical activity. (*Id.* at 6.) Subsequent correspondences with plaintiff's physician did not satisfy Hardin's Bakery's concerns. (*Id.* at 6-7.) On August 20, 2001, plaintiff received notice that Hardin's Bakery was placing him on a salary continuation plan for short term disability. (*Id.* at 7.) At that time, Tommy Wester also notified plaintiff that, due to an accounting error, he did not have long term disability insurance benefits. (*Id.* at 7.) Hardin's Bakery attempted to refund the full amount of the premiums paid by plaintiff ($495.80); however, plaintiff refused acceptance and placed the entire amount in an escrow account. (*Id.* at 8.)

## II. DISCUSSION

### A. Plaintiff's Motion to Remand

> "Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal jurisdiction ... Congress has accomplished this 'complete preemption' in 29 U.S.C. § 1132(a), which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan."

*Kemp v. International Business Machines Corp.*, 109 F.3d 708 , 712 (11th Cir. 1997).

> "ERISA superpreemption exists only when the 'plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a).' *Whitt*, 147 F.3d [1325,] 1330 [(11th Cir. 1998)]. Regardless of the merits of the plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when four elements are satisfied. First, there must be a relevant ERISA plan. *See id.*; *Kemp v. International Business Machs. Corp.*, 109 F.3d 708, 713 (11th Cir. 1997). Second, the plaintiff must have standing to sue under that plan. *See Engelhardt v. Paul Revere Life Ins. Co.*, 130 F.3d 1346, 1350 n. 3 (11th Cir. 1998). Third, the defendant must be an ERISA entity. *See id.*; *Franklin v. QHG of Gadsden, Inc.*, 127 F. 3d 1024, 1029 (11th Cir. 1997); *see also Morstein v. National Ins. Servs., Inc.*, 93 F.3d 715, 722 (11th Cir. 1996) (en banc) (no preemption at all–not even defensive preemption–when the defendant is 'a non-ERISA entity' and the claims do not 'affect relations among principal ERISA entities as such'). Finally, the complaint must seek

3

compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan. *See Engelhardt*, 139 F.3d at 1354; *Franklin*, 127 F.3d at 1029."

*Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999).

This court must first decide whether Hardin's Bakery's long term disability plan is an employee welfare benefit plan covered by ERISA. ERISA defines an employee welfare benefit plan as:

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care of benefits, or benefits in the even of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death and insurance to provide such pensions.)."

Sec. 29 U.S.C. § 1002(1).

Hardin's Bakery, a private employer engaged in commerce, established its long term disability plan for the purpose of providing employees and their beneficiaries with long term disability insurance benefits. (Defendant's Reply Brief at 3.) The plan is funded through the contributions of participating employees. (*Id.* at 3.) As such, it falls within the meaning of § 29 U.S.C. § 1002(1). Furthermore, plaintiff has standing to sue as he was an employee entitled to participate in the long term disability insurance plan. Thirdly, the defendant qualifies as an ERISA entity. "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Morstein v. National Insurance, Services, Inc.*, 93 F.3d 715, 722 (11th Cir. 1996). Hardin's Bakery, as plaintiff's employer, controlled the selection of the insurance company providing the long term disability insurance, as well as deduction of premium payments from its

4

employees' salaries. Lastly, the plaintiff does seek relief available under 29 U.S.C. § 1132(a).

The plaintiff seeks damages for Hardin's Bakery's failure to remit the plaintiff's premium payments, deducted from his pay checks for the purpose of securing secure long term disability insurance coverage. As such, all of plaintiff's claims arise out of Hardin's Bakery's sponsorship and administration of an ERISA plan. Furthermore, plaintiff seeks the recovery of a plan asset under ERISA. "[A]ssets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a). Accordingly, every monthly premium deducted from the plaintiff's pay check from October 2000, until August 2000, constitutes an asset under ERISA. Therefore, the plaintiff is seeking relief under § 1132(a).

Because the plaintiff and defendants are ERISA entities, the plan at issue is an ERISA plan, and the plaintiff seeks damages under 29 U.S.C. § 1132(a), this court finds that plaintiff's state law claims are preempted under 29 U.S.C. § 1132(a)(1)(B). Accordingly, plaintiff's motion to remand this action to state court is due to be denied.

**B.     Defendant's Motion to Dismiss or Stay**

The defendants argue that the plaintiff failed to exhaust the administrative remedies available under the long term disability plan ("the plan"). The plan establishes an administrative procedure under which a participant or beneficiary may file a claim for benefits. (Defendant's Exhibit at 20-24.) Plaintiff does not allege in his complaint that he attempted to utilize or exhaust the administrative remedies available to him.

"[O]ur caselaw makes plain that as a general rule plaintiffs in ERISA actions must

5

exhaust available administrative remedies before suing in federal court. *See Counts*, 111 F.3d at 108; *Springer*, 908 F.2d at 899; *Mason*, 763 F.2d 1225-27. This rule is grounded in several important policy rationales, and also is consistent with Congressional intent. As we explained in *Mason*:

> Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated. In addition, imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures.

*Id.* at 1227 (internal citation omitted). As a result, we strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims in federal court with certain caveats reserved for exceptional circumstances. *See Springer*, 908 F.2d at 899. Thus far, our circuit has recognized exceptions only when 'resort to administrative remedies would be futile or the remedy inadequate,' *Counts*, 111 F.3d at 108, or where a claimant is denied 'meaningful access' to the administrative review scheme in place, *Curry*, 891 F.2d at 846-47."

*Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (citing *Counts v. American General Life and Accident Insurance Co.*, 111 F.3d 105 (11th Cir. 1997); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F. 2d 897 (11th Cir. 1990); *Mason v. continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985); *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990)).

Plaintiff has not responded to the defendants motion to dismiss; therefore, plaintiff has not asserted that resort to administrative remedies would be futile or inadequate. Nor does plaintiff assert that he was denied meaningful access to the administrative review. Accordingly, defendants' motion to dismiss is due to be granted.

## III. CONCLUSION

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

Done this 9th day of January, 2002.

                                                                                       United States District Judge